UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES HENRY BROOKS,

               Plaintiff,

v.

UNKNOWN TREFIL et al.,

               Defendant.
_____/

Case No. 1:25-cv-1642

Honorable Robert J. Jonker

**<u>OPINION</u>**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in

that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.

**Discussion**

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues the following MCF staff: Captain Unknown Trefil,

2

Sergeant Unknown Caltagirone, Corrections Officer Unknown Smith, and Hearings Investigator Unknown Cooper. (Compl., ECF No. 1, PageID.1–2.)

In Plaintiff's complaint, Plaintiff states that on August 24, 2024, "at 19:00" he attended a visit in the visiting room at MCF that was scheduled to last two hours. (*Id.*, PageID.3.) "At 19:06," Defendant Caltagirone removed Plaintiff from the visiting room and asked Plaintiff if he had a medical detail for the wheelchair he was using. (*Id.*) Plaintiff explained to Defendants Caltagirone and Trefil that a non-party prison counselor gave Plaintiff the wheelchair "nearly 3 months prior due to health reasons[.]" (*Id.*) Plaintiff states that his medical records confirm that he was given the wheelchair, and he had used the wheelchair during visits before. (*Id.*) Plaintiff "was told to leave the wheelchair in between gates 3 and 4 and resume [his] visit." (*Id.*) Plaintiff left the wheelchair and resumed the visit "although [he] could barely walk and [he has a] special medical detail against sitting in the hard chairs that [he] was made to sit in." (*Id.*)

"At 19:10," Plaintiff was removed from the visiting room again by Defendant Caltagirone and accused of smuggling items into the visiting room that were in the back pocket of the wheelchair. (*Id.*) Plaintiff alleges that Defendant Smith allowed him to bring the items into the visiting room because she searched Plaintiff before the visit and did not confiscate the items or make Plaintiff remove the items, "which led to a clear case of dereliction of duty by an officer, not a malicious smuggling by a prisoner." (*Id.*) As a result of this incident, Defendants Trefil, Caltagirone, and Smith placed Plaintiff in segregation, where he remained for three weeks. (*Id.*)

While in segregation, on August 28, 2024, Plaintiff was hospitalized for six days for "stress due to this entire ordeal, kidney failure, dehydration, and heart failure[.]" (*Id.*) Plaintiff states he was "brought back to seg[regation] for an additional week," and placed on "2 weeks loss of privileges and 1 year of visiting restriction[.]" (*Id.*) Plaintiff's "theft misconduct was dismissed

due to staff vouching for [him.]" (*Id.*) Plaintiff alleges that Defendant Cooper investigated the incident but did not dismiss the remaining misconduct charges for smuggling and contraband.[1]

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise claims under the Eighth Amendment regarding medical care and under the Due Process Clause of the Fourteenth Amendment regarding the misconduct charges, investigation, and resulting sanctions. As relief, Plaintiff requests compensation and punitive damages. (*Id.*, PageID.4.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

---

[1] Plaintiff attaches a misconduct hearing report to his complaint that states his misconduct charges were "1. Smuggling, 2. Possession of Stolen Property; Theft, 3. Contraband." (ECF No. 1-1, PageID.12.) The report indicates that the possession of stolen property/theft charge related to the wheelchair, and the smuggling and contraband charges related to a damaged tablet that was found in the wheelchair. (*Id.*) Plaintiff was found guilty of smuggling and contraband, but he was found not guilty of possession of stolen property/theft. (*Id.*)

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Eighth Amendment Medical Care Claims

Plaintiff raises Eighth Amendment medical care claims regarding the denial of a wheelchair, having to sit in a hard chair against Plaintiff's medical detail, and Plaintiff's hospitalization. (*See* Compl., ECF No. 1, PageID.3.)

"The Eighth Amendment bars the 'inflict[ion]' of 'cruel and unusual punishments.'" *Rhinehart v. Scutt*, 894 F.3d 721, 727 (6th Cir. 2018) (citing U.S. Const. amend. VIII) (alteration in original). "The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart*, 894 F.3d at 737; *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th

Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

"To establish a prison official's deliberate indifference to a serious medical need, an inmate must show two components, one objective and the other subjective." *Rhinehart*, 894 F.3d at 737 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The objective component requires an inmate to show that the alleged deprivation is 'sufficiently serious.'" *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer*, 511 U.S. at 834). In other words, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. When an inmate has a "medical need diagnosed by a physician as mandating treatment," the inmate can establish the objective component "by showing that the prison failed to provide treatment[.]" *Rhinehart*, 894 F.3d at 737 (quoting *Blackmore*, 390 F.3d at 897). "The Eighth Amendment is only concerned with 'deprivations of essential food, medical, or sanitation' or 'other conditions intolerable for prison confinement.'" *Robinson v. McBurney*, No. 2:07-cv-85, 2009 WL 440634, at *2 (W.D. Mich. Feb. 23, 2009) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Id*. (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)). "[T]he severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short period would not rise to an Eighth Amendment violation, while 'substantial deprivations …' may meet the standard despite a shorter duration." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017).

6

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care to the inmate. *Brown,* 207 F.3d at 867. Deliberate indifference requires more than negligence. *Estelle*, 429 U.S. at 106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.") The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In this case, Plaintiff alleges during his visitation with family, he was denied access to a wheelchair that he had been using for "nearly 3 months prior due to health reasons." (Compl., ECF No. 1, PageID.3.) Plaintiff asserts he told Defendants Caltagirone and Trefil that he had permission from a non-party prison counselor to use the wheelchair when they asked Plaintiff if he had a medical detail for the wheelchair. (*Id*.) Plaintiff further alleges that "was told to leave the wheelchair in between gates 3 and 4 and resume [his] visit" even though he "could barely walk and ha[d] special medical details against sitting in the hard chairs [he] was made to sit in." (*Id*.)

The Court assumes that either Defendant Caltagirone, Defendant Trefil, or both, told Plaintiff to leave the wheelchair outside of the visiting room. (*See id*.) However, Plaintiff does not specifically allege that he had a medical detail for the wheelchair, and there are no facts in the complaint to suggest that Plaintiff had a medical detail for a wheelchair. (*See generally id.*) Instead, Plaintiff's allegations suggest only that a non-party prison counselor had previously allowed him to use the wheelchair. Additionally, Plaintiff's complaint does not state what medical need he had to necessitate using a wheelchair. Plaintiff states only that he could barely walk and had permission to use a wheelchair for health reasons, and the Court accepts this as true, *see Denton v. Hernandez*, 504 U.S. 25, 33 (1992); however, Plaintiff also states that the incident in the visiting room only

7

lasted about ten minutes. It appears that the deprivation of the wheelchair required Plaintiff to walk for a short period of time. Taking Plaintiff's factual allegations as true as the Court is required to do at this stage of the proceedings, being forced to walk when Plaintiff alleges that he could barely walk was surely difficult and unpleasant, but "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Robinson*, 2009 WL 440634, at *2. Simply put, Plaintiff has not shown that the deprivation of the wheelchair for the limited duration of his family visit was sufficiently serious such that it posed a substantial risk of serious harm. *See Brown,* 207 F.3d at 867; *Farmer*, 511 U.S. at 834. Therefore, Plaintiff has not met the objective prong of his claim of deliberate indifference related to the deprivation of the wheelchair.

Plaintiff also asserts that he was forced to sit in a hard chair during the visit, which he alleges was against his medical details. Accepting this as true, *see Denton*, 504 U.S. at 33, this deprivation also does not satisfy the objective prong of a claim of deliberate indifference under the Eighth Amendment, *see Estelle*, 429 U.S. at 104–05. Plaintiff's complaint does not state what medical need he had that necessitated the medical detail against sitting in hard chairs. (*See generally* Compl., ECF No. 3, PageID.3.) Thus, Plaintiff has not shown that his medical need was sufficiently serious to meet the objective prong because he does not identify the medical need. *See Brown,* 207 F.3d at 867. Furthermore, Plaintiff states that his visit began at 19:00, and ended at 19:10. (Compl., ECF No. 3, PageID.3.) Plaintiff sat in a hard chair for ten minutes. The Court does not minimize Plaintiff's experience; however, based on the facts alleged in the complaint, the Court does not find that sitting on a hard chair for a ten-minute period was sufficiently serious such that it posed a substantial risk of serious harm. *See Brown,* 207 F.3d at 867; *Farmer*, 511 U.S. at 834.

Even setting this issue aside and assuming that Plaintiff had met the objective component with respect to sitting in a hard chair for ten minutes, Plaintiff would fail to satisfy the subjective component of his deliberate indifference claim because there is no indication in the complaint that Plaintiff told the Defendants, or that the Defendants knew about, Plaintiff's medical details against sitting in hard chairs. A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists[.]" *Farmer*, 511 U.S. at 837. Because there is no indication that the Defendants knew of Plaintiff's medical details, they could not have known there was any risk of harm for making him sit in a hard chair.

Plaintiff also asserts that Defendants Caltagirone, Trefil, and Smith had Plaintiff put in segregation for three weeks, and while in segregation, Plaintiff was hospitalized for six days for "stress due to this entire ordeal, kidney failure, dehydration, and heart failure[.]" (Compl., ECF No. 3, PageID.3.) The Court construes Plaintiff's complaint to raise Eighth Amendment medical care claims against Defendants Caltagirone, Trefil, and Smith regarding Plaintiff's hospitalization; however, Plaintiff has not presented facts to show how Defendants Caltagirone, Trefil, and Smith were deliberately indifferent to Plaintiff's medical needs. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff attributes his hospitalization to the stress he experienced during the visiting room incident and his subsequent placement in segregation, but Plaintiff does not explain how Defendants were involved in Plaintiff's hospitalization. Plaintiff alleges that these Defendants were involved only in his initial placement in segregation, but Plaintiff alleges no facts to suggest that they were involved in, let alone had knowledge of, Plaintiff's condition and medical needs during his time in segregation. Plaintiff does not allege that medical care was denied or delayed by these Defendants. *See Estelle*, 429 U.S. at 104–05.

9

Without any facts indicating Defendants knew of, and were deliberately indifferent to, Plaintiff's serious medical needs, Plaintiff's Eighth Amendment claim regarding his hospitalization fails.

Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment claims against all Defendants will be dismissed for failure to state a claim.

## IV.    Fourteenth Amendment Due Process Claims

In his complaint, Plaintiff raises Fourteenth Amendment due process claims regarding his misconduct charges for the visiting room incident, the resulting sanctions, and investigation. (*See* Compl., ECF No. 1, PageID.3.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 483–84 (1995). A prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty

interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. 515 U.S. at 486; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that he received misconduct charges for smuggling and contraband related to a damaged tablet that was found in the back pocket of the wheelchair during his visit. (*See* Compl., ECF No. 1, PageID.3; Misconduct Hrg. Report, ECF No. 1-1, PageID.12.) Plaintiff asserts that the tablet was his own item, and he was not trying to smuggle it out of the prison. (Compl., ECF No. 1, PageID.3.) Further, Plaintiff states that Defendant Smith allowed Plaintiff to bring the tablet into the visiting room because she searched Plaintiff before the visit and did not confiscate the item or make Plaintiff remove the item, "which led to a clear case of dereliction of duty by an officer, not a malicious smuggling by a prisoner." (*Id.*) Plaintiff states that Defendants Trefil, Caltagirone, and Smith had Plaintiff put in segregation for four weeks because of this incident. (*Id.*) Then, as a result of the misconduct convictions, Plaintiff states that he lost privileges for two weeks and was placed on an unspecified visiting restriction for one year. (*Id.*) Plaintiff also takes issue with Defendant Cooper's hearing investigation, and the fact that Defendant Cooper did not dismiss the two remaining misconduct charges against Plaintiff after he was found not guilty of one misconduct charge. (*Id.*)

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct convictions "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. However, the sanctions

11

available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and Plaintiff's placement in segregation for four weeks, loss of certain privileges for two weeks, and receipt of an unspecified visiting restriction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))). Therefore, Plaintiff fails to state any Fourteenth Amendment due process claims against Defendants Trefil, Caltagirone, and Smith, because Plaintiff has not shown the sanctions imposed on him constituted an atypical and significant hardship.

Furthermore, even if Plaintiff had shown a deprivation of his liberty interest, Plaintiff "received the procedural protections required by the Due Process Clause." *Rimmer-Bey*, 62 F.3d at 791; *see generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). Plaintiff was afforded a hearing and was found not guilty of one of the three misconduct charges. Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to prevent or prevail on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Accordingly, for the reasons above, Plaintiff's Fourteenth Amendment due process claims will be dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997), *overruled on other grounds*, *Jones v. Bock*, 549 U.S. 199, 211–212 (2007). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated:   July 6, 2026                                  /s/ Robert J. Jonker
                                                              Robert J. Jonker
                                                              United States District Judge

13